UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEON LIPPETT,

        Plaintiff,

v.

CORIZON HEALTH, INC.; BETH
CARTER, MD; DIANE HERRING;
SHARON DRAVELING; LISA ADRAY;
THOMAS JORDAN; MICHELLE
PIECUCH,

        Defendants.
_____/

Case No. 18-cv-11175

Paul D. Borman
United States District Judge

Anthony P. Patti
United States Magistrate Judge

## OPINION AND ORDER DENYING, IN PART, AND GRANTING, IN PART, PLAINTIFF LEON LIPPETT'S MOTION FOR REHEARING (ECF NO. 69)

### I.    INTRODUCTION

On February 3, 2020, the Court issued an Opinion and Order granting Defendants Beth Carter and Corizon Health, Inc.'s Motion for Summary Judgment (ECF No. 47), and granting, in part, and denying, in part, Michigan Department of Corrections (MDOC) Defendants Lisa Adray, Sharon Draveling, Diane Herring, Thomas Jordan, and Michele Piecuch's Motion for Summary Judgment (ECF No. 56). (ECF No. 68.) In the Opinion and Order, the Court dismissed all of Plaintiff Leon Lippett's claims except for his Eighth Amendment claim for deliberate indifference to his serious medical needs against Lisa Adray. (*Id.*)

On February 18, 2020, Lippett filed a Motion for Rehearing regarding three points in the Opinion and Order. (ECF No. 69.) Per this Court's order (ECF No. 70), the MDOC Defendants responded on March 4rh. (ECF No. 72.) Lippett submitted a supplement to his Motion on February 24th (ECF No. 71), which this Court initially struck (ECF No. 73) before the parties stipulated to allow for the supplement on March 16th. (ECF No. 74.) After reviewing Lippett's three arguments, the Court finds that only Lippett's third argument clears the high bar for granting reconsideration or rehearing, and therefore denies Lippett's Motion for Rehearing on the first two points, grants it on the third point, and reinstates Lippett's state-law gross negligence claim against Defendant Adray. (ECF No. 69.)

## II.  STANDARD OF REVIEW

"A motion for reconsideration [or rehearing] is governed by the local rules in the Eastern District of Michigan, which provide that the movant must show both that there is a palpable defect in the opinion and that correcting the defect will result in a different disposition of the case." *Indah v. U.S. S.E.C.*, 661 F.3d 914, 924 (6th Cir. 2011). Eastern District of Michigan Local Rule 7.1(h)(3) provides:

> Generally, and without restricting the court's discretion, the court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication. The movant must not only demonstrate a palpable defect by which the court and the parties and other persons entitled to be heard on the motion have been misled but also show that correcting the defect will result in a different disposition of the case.

E.D. Mich. L.R. 7.1(h)(3). "A 'palpable defect' is a defect which is obvious, clear, unmistakable, manifest, or plain." *Michigan Dep't of Envtl. Quality v. City of Flint*, 296 F. Supp. 3d 842, 847 (E.D. Mich. 2017).

"A motion for reconsideration [or rehearing] should not be used liberally to get a second bite at the apple, but should be used sparingly to correct *actual* defects in the court's opinion." *Oswald v. BAE Industries, Inc.*, No. 10-cv-12660, 2010 WL 5464271, at *1 (E.D. Mich. Dec. 30, 2010). It should not be "used as a vehicle to re-hash old arguments or to advance positions that could have been argued earlier but were not." *Smith v. Mount Pleasant Public Schools*, 298 F. Supp. 2d 636, 637 (E.D. Mich. 2003). It follows, then, that "parties cannot use a motion for reconsideration to raise new legal arguments that could have been raised before a judgment was issued," *Roger Miller Music, Inc. v. Sony/ATV Publ'g,* 477 F.3d 383, 395 (6th Cir. 2007), and parties "may not introduce evidence for the first time in a motion for reconsideration where that evidence could have been presented earlier." *Bank of Ann Arbor v. Everest Nat. Ins. Co.*, 563 F. App'x 473, 476 (6th Cir. 2014).

### III.   ANALYSIS

Lippett raises three arguments in his Motion for Rehearing. (ECF No. 69.) First, he contends that the Court committed error by relying on timesheets as proof the dates worked by Defendants Draveling and Herring. (*Id.* at PgID 2507, 2513–14.) Second, he contests the Court's conclusion that no reasonable juror could find

3

that Defendant Herring was subjectively aware of the risk of injury to Lippett if he did not receive prompt treatment. (*Id.* at PgID 2507, 2514–15.) Third, he argues that the Court applied the wrong causation standard to Lippett's state law gross negligence claim against Defendant Adray, and that application of the correct standard would lead to a different result. (*Id.* at PgID 2508, 2516.) Only the third of these points identifies a palpable defect by which the Court was misled.

### A. Reliance on the Timesheets

Lippett's first argument—that the Court "gave undue weight to the dates" on Defendants Herring and Draveling's timesheets, given the discrepancies between the timesheets and the time stamps on reports prepared by Herring and Draveling—is based on the wrong exhibit. (ECF No. 69, MFR, PgID 2513–14.) The "timesheet" that Lippett cites and attaches to his Motion as "Exhibit B" is a shift schedule that was not in front of the Court when it issued the Opinion and Order in question. (ECF No. 69-3, Shift Schedule, PgID 2567.) All that Lippett's document shows is that Defendants Herring and Draveling were scheduled to work the night shift, which generally runs from 7:00 PM to 7:30 AM, on June 28th but not June 27th. (*Id.*)

The timesheets that the Court relied on to find that "neither Nurse Herring nor Nurse Draveling were on duty the night of June 27th" were attached as "Exhibit 4" to Defendant Jordan's deposition transcript. (ECF No. 68, O&O, PgID 2467, *see also id.* at PgID 2489–90 ("[T]he timesheets for both nurses reveal that neither were

4

on duty that night.").) They show the exact time that each nurse punched in and out on the days in question. (ECF No. 45-14, Timesheets, PgID 753–754.) Defendant Herring's timesheet shows that she punched in at 7:01 PM on June 26, 2017, then punched out at 9:03 AM on June 27th, punched back in at 3:06 PM on June 28th, and then punched out at 7:02 AM on June 29th. (*Id.* at PgID 754.) This is entirely consistent with her report, which states that she saw Lippett at 4:29 PM on June 28th and prepared the report at 4:17 AM on June 29th. (ECF No. 48, Herring Report, PgID 862–63.) Similarly, Defendant Draveling's timesheet shows that she did not punch in on June 26th or 27th and that she punched in at 6:56 PM on June 28th before punching out at 11:00 AM on June 29th, which is consistent with her report, prepared at 10:40 AM on June 29th, that she saw Lippett at 12:50 AM on June 29th. (ECF No. 45-14, Draveling Timesheet, PgID 753; ECF No. 48, Draveling Report, PgID 871.) There are no discrepancies between the reports and the timesheets relied upon by the Court.

Lippett's attempt to cast doubt on the accuracy of the timesheets by citing testimony from Officer Sean Markus and Defendant Adray is also unavailing. Officer Markus testified that the logbook he was looking at during his deposition was "mislabeled" at the top of one page and he confirmed that his testimony related to events that happened during the night shift starting on June 28th and ending on June 29th. (ECF No 61-3, Markus Dep., PgID 1991.) That testimony has nothing to

5

do with the accuracy of the nurses' timesheets. Defendant Adray testified that she "believe[d]" that Defendant Herring first saw Lippett in the evening of the 27th, but there is no reason to credit Adray's belief over conclusive evidence that neither Defendant Herring ror Defendant Draveling was on duty the night of June 27th. The Court did not commit an error on this point.

### B. Defendant Herring's Subjective Element

Lippett's second argument inappropriately re-hashes points he already made in his initial Response to the MDOC Defendants' Motion for Summary Judgment. *See Mount Pleasant Public Schools*, 298 F. Supp. 2d at 637 (re-hashing arguments is inappropriate in a motion for reconsideration). He argues that "there is ample evidence of [Defendant Herring's] inaction in the face of obvious risk of further infection without prompt medical care," and that the Court "overlook[ed]" the fact that "subjective knowledge can be proved by circumstantial evidence that the danger was so obvious that the Defendant must have realized it." (ECF No. 69, MFR, PgID 2507, 2514–15 (citing *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890 (6th Cir. 2004); *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834 (6th Cir. 2002); *Phillips v. Roane Cty*, 534 F.3d 531 (6th Cir. 2008); and *Farmer v. Brennan*, 511 U.S. 825, 842 (1994).) The Court already considered both of these arguments.

In his Response, Lippett argued that Defendant Herring, who reviewed Lippett's initial kite, which said that he was in significant pain and that he believed

6

his athlete's foot had developed a severe infection, was aware of a worsening infection and inappropriately delayed care by taking no action other than scheduling an appointment for a few days later. (ECF No. 60, Response to MDOC, PgID 1061–62.) Facing this argument, the Court analyzed Herring's subjective state of mind by considering whether the symptoms Lippett reported in his kite indicated that his risk of serious complications from the infection was so "obvious" that Nurse Herring must have been aware of it. (ECF No. 68, O&O, PgID 2494–95 (citing *Farmer*, 511 U.S. at 842).) The Court distinguished the facts of *Phillips*, 534 F.3d at 540–41, and the facts of *Blackmore*, 390 F.3d at 896, from Lippett's case and found that the risk was not so obvious that the subjective element could be found without evidence that Herring actually perceived the risk. (*Id.*) In other words, the Court considered and rejected Lippett's second point.

### C. Defendant Adray's Liability for Gross Negligence

Lippett's third argument, that the Court applied the wrong causation standard to his state law gross negligence claim against Defendant Adray, has merit. (ECF No. 69, MFR, PgID 2508, 2516.) In the Opinion and Order, this Court relied on *Tarlea v. Crabtree*, 263 Mich. App. 80, 84 (2004) and *Robinson v. Detroit*, 462 Mich. 439, 459 (2000), for the requirement that, to be actionable, a defendant's gross negligence must be "the most immediate, efficient, and direct cause" of the plaintiff's injury. (ECF No. 88, O&O, PgID 2501.) The Court, however, omitted a

7

discussion of a more recent Michigan Supreme Court case that "clarif[ied] the role that factual and legal causation play when analyzing whether a defendant's conduct was 'the proximate cause' of a plaintiff's injuries under the GTLA [Governmental Tort Liability Act]." *Ray v. Swager*, 501 Mich. 52, 64–65 (2017) [hereinafter *Swager I*]. This error caused the Court to misapply the standard to the allegations against Defendant Adray.

*Swager I* established a three-step inquiry for finding that a defendant's gross negligence was *the* proximate cause of the plaintiff's injuries under the GTLA. *Ray v. Swager*, 321 Mich. App. 755, 759–760 (2017) [hereinafter *Swager II*]. First, the plaintiff must establish a genuine issue of material fact that the defendant's gross negligence was *a* cause in fact of the injury. *Id.* Second, the plaintiff must establish a genuine issue on whether the defendant's gross negligence was *a* proximate cause of the injury. *Id.* at 761. This analysis uses the traditional proximate cause rule that:

> If a man does an act and he knows, or by the exercise of reasonable foresight should have known, that in the event of a subsequent occurrence, which is not unlikely to happen, injury may result from his act, and such subsequent occurrence does happen and injury does result, the act committed is negligent, and will be deemed to be *the proximate cause* of the injury.

*Swager I*, 501 Mich. at 67–68. Third, the plaintiff must establish a question of material fact that either (a) no other human actor's negligence proximately caused the injury, or (b) the defendant's gross negligence was a more "immediate, efficient,

8

and direct cause" of the injury than any other human actor's negligence. *Swager II*, 321 Mich. App. at 760. If the plaintiff carries this burden, summary judgment should be denied. *Id.* at 760–61.

This Court's analysis of Adray's potential gross negligence in the initial Opinion and Order was flawed because it failed to follow the *Swager* framework, under which it is plain that Lippett has established a genuine issue of material fact as to whether Adray's gross negligence in canceling his 9:30 AM appointment on June 28th, when she was likely aware that he had been complaining of a serious and intensifying infection for two days, as well as her two other refusals to see him, despite hearing that his condition was bad from several corrections officers, proximately caused the serious complications, including sepsis and kidney failure, that developed from the cellulitis in his foot. (*See* ECF No. 68, O&O, PgID 2467–71 (describing Adray's rebuffs of Lippett's attempts to get care), PgID 2477–79 (describing complications).)

First, there is a genuine issue of fact over whether Adray's actions were the cause in fact, or but for cause, of Lippett's injuries. *Swager II*, 321 Mich. App. at 759–60. Adray's actions delayed the initial examination and first round of treatment by seven hours. (ECF No. 68, O&O, PgID 2467–73.) The initial delay meant that, when Lippett realized that he was not responding to the initial antibiotic treatment, it was the middle of the night and no doctor was on site to reexamine his foot. (*Id.* at

9

PgID 2474–76.) When he did see Dr. Carter the following morning, he was sent to the hospital. (*Id.*) Lippett produced two doctor's opinions saying that the delay in diagnosis and treatment contributed to his sepsis, which led to his kidney failure. (ECF No. 61-2, Polsky Disclosure, PgID 1828; ECF No. 61-2, Pattner Disclosure, PgID 1839–41.) This is sufficient evidence for a jury to conclude that, but for Adray's gross negligence, Lippett would not have suffered such serious complications. Lippett carried his burden at the first step of the *Swager I* framework.

Second, Lippett has established a question of fact on whether Adray's conduct was *a* proximate cause of his injuries. *Swager II*, 321 Mich. App. at 760. The question at this step is whether Adray knew or should have known that her actions were likely to cause the type of injury that Lippett suffered. *Swager I*, 501 Mich. 67–68.) Nurse Carol Rogers, retained by Lippett, opined that "any reasonable nurse would realize that allowing a severe and spreading infection to remain untreated would likely result in serious harm to the patient," such as the infection spreading to "adjacent tissue, then into the blood stream, then into other body organs." (ECF No. 61-2, Roger's Disclosure, PgID 1833.) A jury could credit Nurse Rogers' opinion and find that Adray should have know that her actions could cause the severe infection that Lippett suffered. Thus, Lippett carried his burden at step two.

Third, Lippett has established a question of material fact that no other human actor's negligence proximately caused his injury. *Swager II*, 321 Mich. App. at 760.

As stated in the Opinion and Order, there is a question as to whether any of the other defendants, who were not grossly negligent, were negligent at all, so there is a question as to whether any other person could be found legally responsible for Lippett's injuries. (ECF No. 68, O&O, PgID 2502–03.) So, because "[t]he relevant inquiry is not whether the defendant's conduct was the immediate factual cause of injury, but whether, weighing the legal responsibilities of the actors involved, the [defendant's acts] could be considered 'the proximate cause,'" the fact that there is a question as to whether any other human actor had a legal responsibility to act differently means that there is a question of fact at step three. *Swager II*, 321 Mich. App. at 760. Accordingly, there is a question of fact on proximate causation, and the Court erred in granting summary judgment on Lippett's gross negligence claim against Defendant Adray. The Court therefore grants Lippett's Motion for Rehearing on this claim. (ECF No. 69.)

### IV. CONCLUSION

For the above reasons, Plaintiff Leon Lippett's Motion for Rehearing is DENIED, in part, and GRANTED, in part. (ECF No. 69.) The state-law gross negligence claim against Defendant Lisa Adray is hereby reinstated.

IT IS SO ORDERED.

Dated: June 23, 2020   s/Paul D. Borman
　　　　　　　　　　　　　　　　　　　Paul D. Borman
　　　　　　　　　　　　　　　　　　　United States District Judge