UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| LEON LIPPETT,<br>　　　　　Plaintiff,<br><br>v.<br><br>LISA ADRAY,<br>　　　　　Defendant.<br>_____/ | Case No. 18-cv-11175<br><br>Paul D. Borman<br>United States District Judge<br><br>Anthony P. Patti<br>United States Magistrate Judge |

### OPINION AND ORDER DENYING DEFENDANT LISA ADRAY'S MOTION FOR JUDGMENT ON THE PLEADINGS (ECF No. 95)

## I. Background

Plaintiff Leon Lippett filed the Complaint in this case on April 13, 2018. (ECF No. 1.) Lippett "is a resident of the Macomb Correctional Facility ('MCF'), a prison operated by the Michigan Department of Corrections." (ECF No. 1, PageID 2.) In his Complaint, Lippett alleges the following. "On June 25, 2017, [he] began to experience pain and swelling in one of his left toes, later diagnosed as cellulitis." (ECF No. 1, PageID 4.) Starting on June 26, he repeatedly asked for "urgent" treatment, but employees at MCF failed to provide it, until finally he "was sent to the hospital on June 29 [] for emergency treatment." (ECF No. 1, PageID 4–9.) "As a result of th[e] delay, . . . he has been diagnosed with injurious medical condition[s] which include but are not limited to: a. Lymphedema . . . ; b. Neuritus and neuropathy

1

. . .; c. Chronic kidney disease (Stage III); d. Hypertensive nephrosclerosis . . . ; and e. Anemia." (ECF No. 1, PageID 10) (internal line breaks omitted).

Lippett brought three causes of action against Defendants Corizon Health, Inc., Dr. Beth Carter, Diane Herring, Sharon Dravelling, Lisa Adray, Officer Jordan, and M. Piecuch. First, he asserted a constitutional claim (through 42 U.S.C. § 1983) against all of these defendants. He claimed that the individual defendants "violated [his] rights under the Eighth and Fourteenth Amendments by their deliberate indifference to his medical needs and by willfully refusing to provide medical care needed"; and he claimed that Corizon "was deliberately indifferent to serious medical needs by adopting customs, policies and practices which cause prisoners like [him] unnecessary pain and likelihood of medical injury." (ECF No. 1, PageID 10–11.)

Second, Lippett asserted "a gross negligence" claim against Adray, Herring, Dravelling, Jordan, and Piecuch. (ECF No. 1, PageID 12.) He claimed that they "each owed to [him] the duty not to cause injury through gross negligence," and that,

> [d]espite and in violation of that duty, [they] undertook the conduct described [in his complaint], including refusal to provide needed medical care in a timely and professional manner, which conduct was so reckless as to demonstrate a substantial lack of concern for whether an injury results, in the following ways, without limitation: a. By refusing to treat [him]; b. By Failure to conduct a timely and adequate medical assessment of [him]; c. By failing to provide employees and subordinates with proper and adequate instruction in the care of infection and infectious disease; d. By failing to adopt adequate

2

procedures for prompt treatment of prisoners suffering from serious infections.

(ECF No. 1, PageID 13.) He further claimed that "[a]s a proximate result of the gross negligence . . . [he] has suffered and will suffer damages and losses, including without limitation," "pain," "anguish," "[p]ermanent loss of function in [his] left foot," and "[p]ermanent kidney damage." (ECF No. 1, PageID 13–14.)

Third, he asserted a claim of "intentional inflection of emotional distress" against all the defendants. (ECF No. 1, PageID 14.)

The defendants answered the Complaint and submitted affirmative defenses on May 1, 2018. (ECF Nos. 7, 8.)

On December 3, 2019, the Court entered a stipulated order dismissing the intentional inflection of emotional distress claim. (ECF No. 59.)

On February 3, 2020, the Court granted summary judgment to all of the defendants on the remaining claims, except for Adray on the constitutional claim. (ECF No. 68.) On June 23, 2020, the Court partially granted Lippett's Motion for Reconsideration of its summary judgment decision and reinstated Lippett's negligence claim against Adray.

On November 30, 2022, about three and half years after she answered the Complaint, Adray filed the Motion for Judgment on the Pleadings that is now before the Court. (ECF No. 95.) Lippett responded on December 20, 2022. (ECF No. 98.) And Adray replied eight days later. (ECF No. 99.) Because Lippett did not raise any

3

procedural issues with Adray filing this motion this late in the case,[1] the Court will consider it on the merits.

## II. Standard of Review

"A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) generally follows the same rules as a motion to dismiss the complaint under Rule 12(b)(6)." *Amir v. AmGuard Ins. Co.*, 606 F. Supp. 3d 653, 658 (E.D. Mich. 2022) (citing *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 480 (6th Cir. 2020)).

Federal Rule of Civil Procedure 12(b)(6) allows for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012). To state a claim, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he complaint 'does not need detailed factual allegations' but

---

[1] Federal Rule of Civil Procedure 12(c) provides that motions for judgment on the pleadings may be filed "[a]fter the pleadings are closed—but early enough not to delay trial." Generally, however, "12(c) motions address the complaint on the pleadings [before] discovery has occurred." *Newell v. Cent. Michigan Univ. Bd. of Trustees*, 461 F. Supp. 3d 589, 595 (E.D. Mich. 2020).

4

should identify 'more than labels and conclusions.'" *Casias v. Wal–Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

The court "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Handy-Clay*, 695 F.3d at 539 (internal citations and quotation marks omitted). In other words, a plaintiff must provide more than a "formulaic recitation of the elements of a cause of action" and his or her "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555–56. The Sixth Circuit has explained that, "[t]o survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the defendant bears legal liability. The facts cannot make it merely possible that the defendant is liable; they must make it plausible." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### III. Discussion

Adray argues that she is entitled to judgment on the pleadings on Lippett's "gross negligence" claim for three reasons: 1) "The complaint fails to plead a claim for negligence under Michigan law" (ECF No. 95, PageID 2840); 2) "Under Michigan law, [Lippett] cannot bring a gross negligence claim while simultaneously alleging an intentional tort" (ECF No. 95, PageID 2842); and 3) Adray is entitled to

governmental immunity because there is no set of facts that could show that Adray was 'the proximate cause' of [Lippett]'s injuries" (ECF No. 95, PageID 2844). For the reasons that follow, the Court will find that all of these arguments fail and **DENY** Adray's Motion.

**1. Lippett sufficiently pleaded a claim for negligence under Michigan law.**

Federal Rule of Civil Procedure 8(a)(2) provides that "[a] pleading that states a claim for relief must contain . . . a short and plaint statement of the claim showing that the pleader is entitled to relief."

Adray argues that the Complaint's pleading "a claim for gross negligence" fails to satisfy Rule 8(a)(2) because gross negligence "is not an independent cause of action under Michigan law." (ECF No. 95, PageID 2840) (citing *Beaudrie v. Henderson*, 465 Mich. 124, 139 (2001) and *In re Flint Water Cases*, 384 F. Supp. 3d 802, 871 (E.D. Mich. 2019)). Rather, she explains, "[g]ross negligence enters the equation through the [Governmental Tort Liability Act ('GTLA')]" as "'*an affirmative defense*'": specifically, "[t]he GTLA confers governmental immunity to certain tortious government actors 'unless their conduct amounted to gross negligence that was the proximate cause of a plaintiff's injuries.'" (ECF No. 95, PageID 2841) (emphasis added) (quoting *In re Flint Water Cases*, 384 F. Supp. 3d at 872)

6

Adray notes that, in contrast to gross negligence, "ordinary negligence and professional negligence are causes of action under Michigan law." (ECF No. 95, PageID 2841) But "'[t]o establish a prima facie case of negligence,'" she relays, "'a plaintiff must prove: (1) that the defendant owed a duty to the plaintiff; (2) that the defendant breached the duty; (3) that the defendant's breach of duty was a proximate cause of the plaintiff's damages; and (4) that the plaintiff suffered damages.'" (ECF No. 95, PageID 2841) (quoting *Chivas v. Koehler*, 182 Mich. App. 467, 475 (1990) and citing *In re NM Holdings Co., LLC*, 622 F.3d 6113, 618 (6th Cir. 2010)).

Lippett responds that "[a]lleging simple negligence would not satisfy the Rule 12(c) standard because simple negligence is not sufficient to establish a state law liability claim," given the GTLA's immunity provision. (ECF No. 98, PageID 2866) (quoting the GTLA, MCL § 691.1407(2)(c)). He asserts that "[t]he Complaint pleads the relevant background facts, then makes the relevant allegations of gross negligence," by alleging that Adray breached the duty she owed to Lippett "'not to cause injury through gross negligence'" when she "'refus[ed] to treat [him]' and 'fail[ed] to conduct a timely and adequate medical assessment of [him].'" (ECF No. 98, PageID 2866) (quoting ECF No. 1 PageID 13). He also maintains that "[t]he pleadings, on their face, notify [Adray] of the nature of the claim." (ECF No. 98, PageID 2867) (citing *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 608 (6th Cir. 2014); *Ziegle v. IBP Hog Market, Inc.*, 249 F.3d 509, 511–12 (6th Cir. 2001);

7

and *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999)). He adds that "the Complaint alleges 'negligence', albeit with the adjective 'gross.'" (ECF No. 98, PageID 2867.)

Adray replies that "Lippett utterly fails to address the cases cited in [her] motion where 'gross negligence' claims were dismissed and/or where Michigan courts unequivocally state that [the GTLA] 'does not create a cause of action and that a plaintiff must first establish that the governmental employee defendant owed a common-law duty to the plaintiff.'" (ECF No. 99, PageID 2880–81) (quoting *Rakowski v. Sarb*, 269 Mich. App. 619, 627 (2006) and citing *Beaudrie*, 465 Mich. at 139 n.12 and *In re Flint Water Cases*, 384 F. Supp. 3d 802). She urges that, "[t]o the extent other courts have previously allowed claims for 'gross negligence' to slip by, this Court need not continue to ignore those mistakes and should enforce federal pleading standards." (ECF No. 99, PageID 2882.) And finally, she complains that, "[b]ecause Lippett has not properly pleaded a claim under Michigan law, [she] does not know if she is expected to go to trial on an ordinary negligence claim, a professional negligence claim [which is also known as malpractice], or [an]other type of claim under Michigan law for which there are different model civil jury instructions." (ECF No. 99, PageID 2882.)

The Court ordered Lippett to respond to this last complaint. In turn, he states that Adray "was negligent under the standard of M. Civ. J. I. 10.02, 'the failure to do something that a reasonably careful person would do, or the doing of something that

8

a reasonably careful person would not do, under the circumstances'" and also "professional[ly] negligent under M. Civ. J. I. 30.01: the failure to do something that a correctional nurse of ordinary learning, and judgment would do, or doing something that a reasonable correctional nurse would not do." (ECF No. 102, PageID 2892.) To that, Adray replies that "[n]either" of those "cause[s] of action is pleaded in the complaint." (ECF No. 103, PageID 2895.) She further asserts that "the two jury instructions cannot be used together, as the note on use to jury instruction 10.02 states '[t]his instruction is not intended to apply to the defendant in a malpractice case.'" (ECF No. 103, PageID 2895.)

The Court **DENIES** Adray's Motion for Judgment on the Pleadings on the basis that Lippett fails to plead a claim for negligence. Although it is true that there is no independent cause of action for "gross negligence," it is clear to the Court (and should be clear to Adray) that Lippett's Complaint "bring[s] a negligence claim against [Adray] and [further] argu[es] that [Adray's] conduct was so grossly negligent that [she is] not entitled to state-law immunity." *Bennett v. Winn*, No. 17-cv-12249, 2020 WL 4013307, at *9 n.6 (E.D. Mich. July 16, 2020) (interpreting a pro se plaintiff's complaint for "gross negligence"). Indeed, as Adray alludes to in her reply brief, courts have routinely allowed complaints to plead negligence in this way. *See, e.g.*, *Brent v. Wayne Cnty. Dep't of Hum. Servs.*, 901 F.3d 656, 701 (6th Cir. 2018) ("The district court [] erred in striking plaintiffs' gross-negligence claims

9

on the ground that they were not cognizable under Michigan law."); *Stojcevski v. Cnty. of Macomb*, 143 F. Supp. 3d 675, 692 (E.D. Mich. 2015) ("*Kindl* suggests that Plaintiff has stated a viable gross negligence claim against the Macomb County Defendants." (citing *Kindl v. City of Berkley*, 798 F.3d 391 (6th Cir. 2015)).

Lippett's complaint plausibly alleges the elements of negligence too. The Complaint alleges that Adray "owed to Plaintiff the *duty* not to cause injury through gross negligence," that Adray *breached* that duty by, among other things, "refusing to treat [Lippett]" and/or "fail[ing] to conduct a timely and adequate medical assessment of [Lippett]," and that, "[a]s a [foreseeable and thus] *proximate result* of" this breach, Lippett has "suffered and will suffer *damages* and losses" including "[e]xtreme physical pain" and "permanent loss of function in Plaintiff's left foot." (ECF No. 1, PageID 12–13) (emphasis added).

The cases cited by Adray do not undermine this conclusion. In *Beaudrie*, the Michigan Supreme Court noted that the GTLA "does not *create* a cause of action," but it did not hold that a court may not construe a pleading of "gross negligence" as a pleading of negligence that is so extreme as to be "gross." *Beaudrie*, 465 Mich. at 139 n.12 (emphasis added). In *In re Flint Water Cases*, this Court treated a claim of "gross negligence" as one "one of ordinary negligence," then went on to dismiss the claim because the plaintiffs had failed to plead the elements of a negligence, not because they added the word "gross" to the title of their claim. *In re Flint Water*

10

*Cases*, 384 F. Supp. 3d at 871–72. And similarly, in *Rakowski*, the Michigan Court of Appeals upheld the trial court's grant of *summary judgment* on the plaintiff's gross negligence claim because the plaintiff had failed to create jury questions as to proximate cause and as to the defendant's entitled to immunity under the GTLA, but not because the plaintiff's Complaint pled "gross negligence" instead of just "negligence." *Rakowski*, 269 Mich. App. at 635–36.

Lastly, Adray's complaint that she does not know whether Lippett's claim sounds in ordinary or professional negligence because of the label "gross negligence" is inapposite. The Sixth Circuit recently recognized that "Michigan law provides that the substance—*not the label*—of an allegation determines whether a plaintiff raises a medical-malpractice or a negligence claim." *Albright v. Christensen*, 24 F.4th 1039, 1043 (6th Cir. 2022) (emphasis added) (citing *Dorris v. Detroit Osteopathic Hosp. Corp.*, 460 Mich. 26, 43–44 (1999)); *see also Meyers v. Rieck*, 509 Mich. 460, 469 (2022) ("To determine the nature of the claim, we seek its 'gravamen,' and therefore 'we disregard the labels given to the claim[ ] and instead read the complaint as a whole . . . .'" (quoting *Trowell v. Providence Hosp. & Med. Ctrs., Inc.*, 502 Mich. 509, 519 (2018))).

Adray has not argued that the *substance* of Lippett's complaint restricts his negligence claim to the ordinary or professional kind, nor that the *substance* fails to

establish specific requirements of either or both kinds. The Sixth Circuit explained that:

> "[A] court must ask two fundamental questions in determining whether a claim sounds in ordinary negligence or medical malpractice: (1) whether the claim pertains to an action that occurred within the course of a professional relationship; and (2) whether the claim raises questions of medical judgment beyond the realm of common knowledge and experience."

*Id.* at 1043–44 (quoting *Bryant v. Oakpointe Villa Nursing Ctr.*, 471 Mich. 411, 422 (2004)). But Adray has not engaged with these questions at all, and the Court will not make her arguments for her.

Furthermore, it is not categorically forbidden for plaintiffs to allege both ordinary negligence and malpractice claims in the alternative. Indeed, after the Michigan Supreme Court set out the "two fundamental questions" above in *Bryant*, it "advised" plaintiffs in cases "in which the line between ordinary negligence and medical malpractice is not easily distinguishable" to "file their claims alternatively in medical malpractice and ordinary negligence." *Bryant*, 471 Mich. at 432–33. And this Court has relied on *Bryant* to allow negligence and malpractice claims to move past the pleading stage together in this way. *See Gaines v. Cnty. of Wayne*, No. 20-cv-11186, 2021 WL 735785, at *4 (E.D. Mich. Feb. 25, 2021) ("At this stage of the proceedings, it is too early to tell whether the reasonableness of Meadows's action could be assessed by lay jurors based on their common knowledge and experience. Determination of this issue will require discovery and further factual

12

development."); *Dudley v. Genesee Cnty.*, No. 17-cv-10800, 2018 WL 3020449, at *3 (E.D. Mich. June 18, 2018) ("Mr. Dudley is entitled to plead [ordinary negligence and medical malpractice] in the alternative.").

If Adray maintains that Lippett cannot proceed to *trial* with alternative ordinary negligence and malpractice theories, that is a separate issue, and it does not entitle her to judgment on the *pleadings*. The parties failed to raise the issue in their summary judgment briefing and in the Joint Final Pre-Trial Order that they sent to the Court on January 9, 2023. But they should be prepared to discuss it at the Pre-Trial Conference that the Court will set at the end of this Order.

**2. Lippett may bring his gross negligence and deliberate indifference claims simultaneously.**

Next, Adray states that, "under the *VanVorous* rule, a complaint alleging an intentional tort cannot simultaneously plead a claim for negligence while relying on the same set of facts." (ECF No. 95, PageID 2842) (citing *VanVorous v. Burmeister*, 262 Mich. App. 467, 483 (2004), *overruled on other grounds by Odom v. Wayne Cnty.*, 482 Mich. 459 (2008)). She also states that "[a] number of federal courts have applied the *VanVorous* rule in §1983 cases to dismiss gross negligence claims under State law." (ECF No. 95, PageID 2842–43) (citing *Arthur v. Hepler*, No. 19-11277, 2019 WL 5103790, at *2 (E.D. Mich. Oct. 11, 2019) and *Collins v. Ferguson*, No. 17-cv-10898, 2017 WL 4387287, at *8 (E.D. Mich. Oct. 3, 2017)). From there, she argues that "[b]oth Plaintiff's Eight Amendment claim and his gross negligence

13

claim are premised on the same factual allegations" and so the gross negligence claim must be dismissed.

Lippett responds by pointing out that "'[d]eliberate indifference' and 'gross negligence' are two causes of action with similar, but not identical, state of mind requirements that are less than actual intent to injure but more than simple negligence." (ECF No. 98, PageID 2868) (citing *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 896 (6th Cir. 2004) and *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). He avers that "pleading inconsistent theories is entirely permissible under F[ederal Rule of Civil Procedure] 8(d)(2)" and the task of distinguishing between deliberate indifference and gross negligence "can be resolved when it is time to instruct the jury." (ECF No. 98, PageID 2869) (citing *In re: Nissan Odometer Litigation*, 664 F. Supp. 2d 873 (M.D. Tenn. 2009); *Soto v. UPS Co.*, 819 F.3d 788, 798 (6th Cir. 2016); and *Reynolds v. Addis*, No. 18-cv-13669, 2020 WL 4260768 (E.D. Mich. July 24, 2020)).

Adray replies that "[a]ll that matters for the *VanVorous* rule to apply is that the federal constitutional claim is an intentional tort," which "[a]n Eighth Amendment claim is." (ECF No. 99, PageID 2884) (citing *VanVorous*, 262 Mich. App. at 483; *Arthur*, 2019 WL 5103790, at *2; and *Bletz v. Gribble*, 641 F.3d 743, 756 (6th Cir. 2011)).

The Court **DENIES** Adray's Motion for Judgment on the Pleadings on the basis that Lippett's gross negligence claim is forbidden by *VanVorous*. In *VanVorous*, the Michigan Court of Appeals ruled that plaintiffs may not "transform claims involving elements of intentional torts into claims of gross negligence." *VanVorous*, 262 Mich. App. at 483. As a result, it dismissed the plaintiff's claim for gross negligence because it was "fully premised on" her claims of excessive force and assault and battery. *Id.* Similarly, two of the three cases cited by Adray on this issue, *Bletz* and *Collins*, involve courts dismissing claims of gross negligence that are based on the same facts as constitutional *excessive force* claims. *See Bletz*, 641 F.3d at 756 ("The only cause of action available to plaintiff for allegations of this nature would be for assault and battery."); *Collins*, 2017 WL 4387287, at *7–8 ("[W]here an excessive force claim is brought against a police officer for an offensive, intentional touching arising from a situation where the plaintiff defied police authority, the plaintiff cannot ordinarily also recover under a negligence theory. This is so because the duty at stake is the duty not to use excessive force, which is properly analyzed under § 1983 or the analogous assault and battery claim, and not the more lenient standard of reasonable care which forms the basis of an ordinary negligence claim.").

But courts have found that negligence claims that are based on the same facts as constitutional *deliberate indifference* claims do not run afoul of *VanVorous*, because deliberate indifference claims contain allegations of a mental state short of full intent

and similar to that in negligence claims. *See Vinson v. Michigan Dep't of Corr.*, No. 14-11130, 2015 WL 9897844, at *15–16 (E.D. Mich. Oct. 30, 2015*), report and recommendation adopted in relevant part, rejected in part*, 2016 WL 245286, at *3 (E.D. Mich. Jan. 21, 2016) (citing *Quigley v. Thai*, 707 F.3d 675, 685-86 (6th Cir. 2013)); *Sandusky v. O'Keefe*, No. 17-11784, 2019 WL 3753835, at *7 (E.D. Mich. Aug. 8. 2019) ("Plaintiff's gross negligence claims survive against the same officers his deliberate indifference claims survive."). In fact, the third case cited by Adray, *Arthur*, confirms this point. In that case, the Court initially dismissed the plaintiff's gross negligence claim under *VanVorous* because it was based on the same facts as his deliberate indifference claim. *Arthur*, 2019 WL 5103790, at *2–3. However, about a month later, the Court reconsidered this dismissal and allowed the gross negligence claim to proceed. *See Arthur v. Hepler*, 19-cv-11277, 2019 WL 6038530, at *1–2 (E.D Mich. Nov. 14, 2019).

This Court agrees that *VanVorous* does not bar a gross negligence claim that is based on the same facts as a constitutional deliberate indifference claim. So *VanVorous* does not bar Lippett's gross negligence claim here.

### 3. Lippett has alleged sufficient facts through which a jury could find that Adray was the proximate cause of his injuries.

Finally, Adray argues that she "is entitled to governmental immunity because there is no set of facts that could show that Adray was 'the proximate cause' of [Lippett]'s injuries." (ECF No. 95, PageID 2844.) She acknowledges that the "Court

already ruled . . . that there were issues of fact with respect to whether Adray was the proximate cause of [Lippett]'s injuries," but, she states, the "intervening Sixth Circuit precedent" of *Hyman v. Lewis*, 27 F.4th 1233 (6th Cir. 2022) "shows that this Court's order on Plaintiff's motion for reconsideration would not survive appellate scrutiny due to its misapplication of State law." (ECF No. 95, PageID 2844.) Specifically, Adray relays that in *Hyman* "the Sixth Circuit panel explained":

> "Hyman cites *Ray v. Swager*, 501 Mich. 52, 903 N.W.2d 366, 373–74 (2017) [(*Swager I*)], as evidence that Michigan courts have also held proximate cause under [the GTLA] to mean *a* proximate cause. But the Michigan Supreme Court specifically noted in *Ray* that its holding there complied with *Robinson* because, in *Robinson*, there was another more appropriate proximate cause of the injury. *Id*. at 375. So too here."

(ECF. No. 95, PageID 2845) (quoting *Hyman*, 27 F.4th at 1238–39). Then she claims that Lippett "made the exact same argument that the plaintiff made in *Hyman* which was rejected by the Sixth Circuit." (ECF No. 95, PageID 2845.) She asserts that she "was not 'the proximate cause' of [Lippett]'s foot injury, his delay in treatment, his subsequent hospital stays, or his sepsis" because "there were numerous more direct causes of [these] injuries aside from [her] alleged conduct," including "numerous actions of other MDOC officials," such Herring and Carter. (ECF No. 95, PageID 2847–50.)

Lippett responds that Adray's "challenge is to the sufficiency of the evidence of 'proximate cause'" and "[i]f there was any merit to that argument, it would support a Rule 56 challenge to the adequacy of the proofs, not a Rule 12(c) challenge to the

17

sufficiency of the pleadings." (ECF No. 98, PageID 2870.) He also states that the "Court decided this very issue two and one half years ago," and he contends that "*Hyman* has little in common with this case." (ECF No. 98, PageID 2870.)

The Court **DENIES** Adray's Motion for Judgment on the Pleadings on the grounds that no set of facts could show that she was the proximate cause of Lippett's injuries.

To begin with, the Court disagrees with Adray's position that this Court's Reconsideration Order would not survive appellate scrutiny after *Hyman*. The Reconsideration Order properly relayed that in *Swager* the Michigan Supreme Court "established a three-step inquiry for finding that a defendant's gross negligence was *the* proximate cause of the plaintiff's injuries under the GTLA":

> First, the plaintiff must establish a genuine issue of material fact that the defendant's gross negligence was *a* cause in fact of the injury. Second, the plaintiff must establish a genuine issue on whether the defendant's gross negligence was *a* proximate cause of the injury. . . . Third, the plaintiff must establish a question of material fact that either (a) no other human actor's negligence proximately caused the injury, or (b) the defendant's gross negligence was a more "immediate, efficient, and direct cause' of the injury than any other human actor's negligence."

(ECF No. 75, PageID 2737–38) (quoting *Ray v. Swager*, 321 Mich. App. 755, 760 (2017) ("*Swager II*") (interpreting *Swager I*, 501 Mich. 52)). The Order also recognized that "nonhuman and natural forces" and human actions that do not "breach [] a duty" are not proximate causes "of a plaintiff's injuries for the purposes

18

of the GTLA," and so cannot displace conduct that is *a* proximate cause as *the* proximate cause. *Swager*, 501 Mich. at 72; ECF No. 75, PageID 2739–40. *Hyman* did not purport to change this three-step inquiry nor to contradict the Reconsideration Order's recognition: it merely confirmed that *Swager I* had already required a defendant's conduct to be *the* proximate cause, not *a* proximate cause. *See Hyman*, 27 F.4th at 1238–39.[2]

Next, based on the pleadings, Lippett has raised a plausible claim that Adray's gross negligence was the proximate cause of Lippett's injuries. Lippett has alleged that Adray denied him prompt medical treatment multiple times, that these denials contributed in fact to Lippett's eventual injuries, and that it was foreseeable that the denials would do so. *See* ECF No. 1. It is also plausible from the pleadings that Adray's denials were *the* proximate cause of Lippett's injuries because they were breaches of her duty to Lippett and the actions of the other MCF employees were either not breaches of their duties *or* were not more immediate and direct causes of Lippett's injuries. *See* ECF No. 1; ECF No. 75, PageID 2736–40 (explaining the proximate cause analysis in more detail and noting that even after considering the discovery in this case there remains "a question as to whether any of the other defendants . . . were negligent at all").

---

[2] Indeed, the Sixth Circuit does not have the power to overrule *Swager I*, because "[t]he highest state court is the final authority on state law." *Fid. Union Tr. Co. v. Field*, 311 U.S. 169, 177 (1940).

## IV. Conclusion

Adray's Motion for Judgment on the Pleadings is **DENIED**.

The Court sets a Pre-Trial Conference for **June 20, 2023**, at **3:00 PM**.

At the Conference, counsel should be prepared to discuss, among other things, whether Lippett intends to, and is legally able to, proceed to trial on both ordinary negligence and professional negligence theories.

**IT IS SO ORDERED.**

Dated: June 2, 2023

s/Paul D. Borman
Paul D. Borman
United States District Judge