UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEON LIPPETT,

    Plaintiff,

v.

LISA ADRAY,

    Defendant.

_____/

Case No. 18-cv-11175

Hon. Sean F. Cox
United States District Court Judge

**<u>OPINION & ORDER PERMITTING OBJECTIONS TO EXHIBITS AND DENYING WITHOUT PREJUDICE DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE AT THE LIABILITY TRIAL OUTSIDE OF A NARROW TIME PERIOD ON JUNE 28, 2017 FOR THE EIGHTH AMENDMENT CLAIM AND TO EXCLUDE EVIDENCE OF INJURIES OCCURING AFTER JUNE 28, 2017, FOR THE NEGLIGENCE CLAIM (ECF No. 164)</u>**

In this civil case, Defendant Lisa Adray moves in limine to exclude evidence that Plaintiff Leon Lippett intends to offer at trial. Defendant argues that this evidence would be irrelevant to whether she violated Lippett's Eight Amendment rights (Count I) or was negligent (Count II), would be unfairly prejudicial, and is barred by qualified immunity.

Trials are dynamic, and a district court should grant a motion in limine "only when evidence is clearly inadmissible on all potential grounds." *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (W.D. Ohio 2004). In cases where that high standard is not met, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." *Id.* Sometimes, an order regarding a motion in limine ruling may have to be reviewed depending on the nature of evidence received during trial.

That standard is not met here, and the Court denies Defendant's motion without prejudice.

1

# BACKGROUND

In this prisoner civil-rights case, Plaintiff Leon Lippett seeks to recover for a severe foot infection that he developed while he was incarcerated in a Michigan prison. Lippett's complaint named six defendants, only one of whom remains in this case: Defendant Adray, a nurse employed by the Michigan Department of Corrections. Lippett asserts deliberate-indifference Eighth Amendment (Count I) and state-law negligence (Count II) claims against Defendant stemming from his foot infection. (ECF No. 1).

This case was initially assigned to Judge Paul D. Borman and was reassigned to the undersigned judge on February 2, 2024.

Defendant moved for summary judgment on the grounds that she was entitled to qualified immunity on Count I and state-law governmental immunity on Count II. (ECF No. 56). In an opinion and order issued on February 3, 2020, Judge Borman determined that Defendant was entitled to summary judgment on Count II but not on Count I. (ECF No. 68). In a subsequent opinion and order, Judge Borman vacated his order granting summary judgment for Defendant on Count II. (ECF No. 75). As such, Counts I and II both remain pending in this case.

Judge Borman recounted the facts material to Lippett's claims (in the light most favorable to Lippett) in his February 3, 2020, opinion, which are recounted here in brief. Lippett's foot began hurting on June 25, 2017, and he filed a written request for medical treatment with prison officials the following day. Prison officials received Lippett's request at 10:41 P.M. on June 26, 2017.

A prison nurse reviewed Lippett's request on 6:17 A.M. on June 27, 2017, and scheduled a "nurse sick call" for June 28, 2017. (ECF No. 68, PageID.2426). Around 6:30 P.M. on June 27, Lippett sought immediate medical treatment. Lippett showed his foot to a prison officer, who

then sent Lippett to join the nightly "med lines." (*Id.* at 2466). Lippett was then seen by a nurse who recorded that his temperature was 101 degrees Fahrenheit. The nurse stated that Lippett's foot "was in bad shape," but advised him that she could only give him Tylenol. (*Id.*).

Lippett was unable to sleep that night due to the pain in his foot and he sought further treatment at 12:30 A.M. on the morning of June 28. Lippett asked a second prison officer for help, who agreed to take him to the prison's health care unit. Two nurses there told Lippett that they could not help him, even though he "literally begged them for some help." (*Id.* at 2467).

Later that morning, Lippett received a written response to the request for treatment that he had submitted on June 25. The response stated that a medical appointment had been scheduled for Lippett at 9:30 A.M. that day, June 28. Lippett needed help walking to the appointment because his foot had become so swollen. When he arrived at the appointment, an officer told him that his appointment had been cancelled. The parties dispute whether Defendant cancelled Lippett's appointment.

Later that day, Lippett decided to go to back to the medical unit without authorization. As he walked back to the medical unit with the help of another inmate, an officer forced him to go back to his housing unit even though he explained that he had a bad infection and was struggling to breath.

Back at his housing unit, Lippett tried to get help from an officer there, Officer Robison. Lippett told Officer Robison that he had a medical appointment, but that the appointment had been cancelled. At approximately 12:30 P.M., Officer Robison called the health care unit and spoke with a nurse who stated officer that Lippett's appointment had been rescheduled. Officer Robison called back at 12:39 P.M., told the nurse that Lippett's foot was in bad condition, and asked whether Lippett could be seen. The nurse responded that Lippett would be seen when a

3

nurse was available. The parties dispute whether Defendant was the nurse that spoke with Officer Robison at 12:30 P.M. and 12:39 P.M. on June 28.

Around 2:15 P.M. on June 28, Lippett again sought help from an officer in his housing unit. Lippett showed the officer his foot and they both went to the medical unit to seek help. At the medical unit, the officer spoke with a nurse who stated that she did not have time to see Lippett. Lippett again returned to his housing unit. The parties dispute whether Defendant was the nurse that refused to treat Lippett at 2:15 P.M. on June 28.

An inmate who was receiving treatment in the health care unit on June 28 testified that he overheard "the head nurse" tell another nurse that Lippett was "faking." (*Id.* at 2471). According to the inmate, the other nurse stated that Lippett should be treated but "the head nurse" insisted that Lippett should not be treated. Defendant was the supervising nurse in the health care unit on June 28 and she clocked out at 3:46 P.M. that day. The parties dispute whether Defendant stated that she believed Lippett was faking his foot injury on June 28.

Lippett was ultimately hospitalized and diagnosed with fever, leukocytosis, cellulitis, and severe sepsis. Lippett's foot was treated, but he later developed chronic kidney disease and now walks with a cane. Experts retained by Lippett detailed that "the delay in diagnosing and treating Lippett's cellulitis led to his sepsis, which led to kidney failure." (*Id.* at 2479).

Trial will proceed on Counts I and II on August 13, 2024. Judge Borman previously granted Defendant's motion to bifurcate trial. (*See* ECF No. 109, PageID.3200). That motion stated in relevant part, "If the trial is bifurcated and the jury determines that Adray is liable, the damages phase can begin immediately or the next day, before the same jury." (ECF No. 105,

PageID.2942). Judge Borman subsequently issued a written order stating that trial will be bifurcated into an "initial liability phase" and a "damages phase."[1] (ECF No. 108).

Defendant now moves in limine to exclude certain evidence at the liability phase of trial. (ECF No. 164). For the following reasons below, the Court denies that motion without prejudice.

## ANALYSIS

Defendant moves in limine to exclude all "evidence at the liability trial regarding Plaintiff's injuries occurring outside a narrow time period for the Eighth Amendment claim and after June 28, 2017, for the negligence claim." (ECF No. 164, PageID.4261). The Court separately addresses Defendant's concerning Counts I and II, both of which fail.

### I.  Negligence Claim

With respect to Lippett's negligence claim, Defendant seeks to exclude "any evidence that [Lippett] could present of events that occurred from June 29, 2017, onward" for two reasons. (ECF No. 164, PageID.4270). **First**, Defendant argues that such evidence "is completely irrelevant" to Lippett's negligence claim. (*Id.*). Defendant specifically points to "[e]vidence of [Lippett]'s hospital stay and any medical treatment received after June 28, 2017." (*Id.* at 4271).

In Michigan, "[a]ll negligence actions . . . require a plaintiff to prove four essential elements: duty, breach, causation, and harm." *Kandil-Elsayed v. F & E Oil, Inc.*, 1 N.W.3d 44, 110 (Mich. 2023). Causation includes "proximate cause," which "involves examining the

---

[1] In his recently-filed trial brief, Lippett stated, "Whether the same jury will sit for both trials . . . [is an] issue[] that still must be decided if the parties cannot come to an agreement." (ECF No. 257, PageID.5316). The Court disagrees. By granting Defendant's motion to bifurcate without modification, Judge Borman effectively ordered that the liability and damages phases of trial will be presented to the same jury.

5

foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences." *Skinner v. Square D. Co.*, 516 N.W.2d 475, 479 (Mich. 1994).

Here, Lippett claims that Defendant is liable for medical complications that occurred or became apparent after June 28, 2017. In other words, Lippett claims that Defendant's negligence proximately caused harms that only evidence from after June 28, 2017, can prove. Consequently, evidence after June 28, 2017, is relevant to Lippett's negligence claim.

**Second**, Lippett claims that evidence of Lippett's injuries from after June 28, 2017, "would be extremely prejudicial." (ECF No. 164, PageID.4271). The resolution of this issue is better left for trial, where Defendant may contemporaneously object to individual pieces of evidence as Lippett offers them.

Defendant's motion to exclude evidence regarding Lippett's negligence claim fail.

**II.     Eighth Amendment Claim**

Concerning Lippett's Eighth Amendment claim, Defendant raises the same two challenges to substantially the same evidence that she raised in connection with Lippett's negligence claim. Defendant also raises a third challenge: that she "is protected by qualified immunity on June 28, 2017, from 9:30 a.m., when she allegedly cancelled Lippett's appointment, to that afternoon when she spoke with Corrections Officer Robison twice, at 12:30 p.m. and 12:39 p.m." (ECF No. 164, PageID.4273). In Defendant's view, qualified immunity shields her from the introduction of evidence from outside this narrow window that is offered to prove that she violated Lippett's Eighth Amendment rights.

This argument misunderstands qualified immunity. Qualified immunity confers immunity from suit; it is not an evidentiary privilege. And Judge Borman held that Defendant was not entitled to summary judgment for Lippett's Eighth Amendment claim on the basis of qualified immunity because the parties genuinely disputed facts material to that determination. If

6

Defendant believes that the jury will resolve these disputes in its favor, then she must raise and prove qualified immunity as an affirmative defense at trial.

Defendant's relevance objection to evidence regarding Lippett's Eighth Amendment claim is bound up with her mistaken view of qualified immunity. Defendant's asserts that evidence outside the "very narrow time frame" she identifies (where qualified immunity may apply) is irrelevant to whether she is liable for constitutionally tortious conduct outside that time frame. (ECF No. 164, PageID.4273). However, as discussed above, Defendant's time frame analysis is inapposite.

Concerning Defendant's undue-prejudice challenge to evidence regarding Lippett's Eighth Amendment claim, this issue, like Defendant's challenge undue-prejudice challenge to evidence regarding Lippett's negligence claim, is better left for trial.

Defendant's motion to exclude evidence regarding Lippett's Eighth Amendment claim fail.

## CONCLUSION & ORDER

Defendant's motion to exclude evidence of Lippett's negligence and Eighth Amendment claims fail. **ACCORDINGLY**, **IT IS ORDERED** that Defendant's Motion in Limine to Exclude Evidence at the Liability Trial Outside of a Narrow Time Period on June 28, 2017 for the Eighth Amendment Claim and to Exclude Evidence of Injuries Occurring After June 28, 2017, for the Negligence Claim (ECF No. 164) is **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Defendant may raise objections under Federal Rules of Evidence 401 and 403 to any exhibits offered by Plaintiff to prove Count I that concern events that occurred before 9:30 A.M. or after 12:39 P.M. on June 28, 2017.

**IT IS FURTHER ORDERED** that Defendant may raise objections under Federal Rules of Evidence 401 and 403 to any exhibits offered by Plaintiff to prove Count II that concern events that occurred after June 28, 2017.

**IT IS SO ORDERED.**

Dated: July 25, 2024             s/Sean F. Cox  
                                         Sean F. Cox  
                                         U. S. District Judge

I hereby certify that on July 25, 2024, the document above was served on counsel and/or the parties of record via electronic means and/or First Class Mail.

                                           s/J. McCoy  
                                           Case Manager