UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEON LIPPETT,

    Plaintiff,

v.

LISA ADRAY,

    Defendant.
_____/

Case No. 18-cv-11175

Hon. Sean F. Cox
United States District Court Judge

## **OPINION & ORDER**
## **ENFORCING SETTLEMENT AGREEMENT**

Plaintiff agreed on the record to settle his claims against Defendant for nearly $500,000. Plaintiff now asks the Court to void that agreement because he incorrectly believed that the Court had effectively barred him from presenting expert-witness testimony at trial. But Plaintiff's unilateral mistake does not render the parties' settlement agreement unenforceable. The settlement agreement that the parties placed on the record is valid and enforceable and the Court shall enforce it.

### **BACKGROUND**

This prisoner civil-rights case was initiated over six years ago when Plaintiff Leon Lippett filed suit against six defendants affiliated with the Michigan Department of Corrections ("MDOC"). Now, only Defendant Lisa Adray remains. Plaintiff alleges that Defendant failed to treat an infection in his foot while he was incarcerated at a prison where Defendant worked and brought this action to recover under 28 U.S.C. § 1983 and state law.[1]

---

[1] This case was initially assigned to the Honorable Paul Borman and was reassigned to the undersigned in February 2024.

1

Plaintiff was initially represented in this action by attorney Mark Bendure, but Plaintiff fired him in October 2023.  Bendure subsequently filed a charging lien on any recovery by Plaintiff.

Plaintiff represented himself *pro se* for a time until, in March 2024, the Court appointed pro bono counsel for him—at his request.  Specifically, the Court appointed counsel from the law firm Miller Canfield Paddock and Stone PLC ("Miller Canfield") under the Court's *pro bono* counsel program.

The next month, this Court referred a settlement conference to Magistrate Judge Anthony Patti.  The magistrate judge held a first settlement conference on May 29, 2024.

On June 4, 2024, Miller Canfield requested preauthorization to draw nearly $25,000 from the Court's Non-appropriated Fund for expert-witness fees.[2]  This Court issued a proposed order, in error, granting the requested funds.  But soon after, it vacated that order and stated the request for preauthorization of pro bono expenses was denied *without prejudice*.  Thus, the order did not bar Plaintiff from seeking authorization to draw from the Fund in the future.

On July 26, 2024, Magistrate Judge Patti continued the settlement conference.  Attorneys for Plaintiff Caroline Giordano, Elyse Lisznyai, and Thomas Cranmer as well as attorneys for Defendant Joshua Smith, Michael Dean, and Lisa Geminick were at that conference.  The parties reached a settlement and placed the terms of their settlement agreement on the record:

> THE COURT:  Thank you.  All right.  So the record will reflect that we have had two sessions of a settlement conference. . . . [I]t's my understanding we've reached a resolution.  And, if I'm correct about that, I'm going to ask Mr. Smith to please put the terms of the settlement on the record.

---

[2] By way of background, counsel appointed under the Court's *pro bono* counsel program may draw from the Non-appropriated Fund to reimburse themselves for expenses such as expert fees, but disbursements from the Fund that would exceed $2,000 require preauthorization from the Chief Judge of this Court.  *In re Plan for the Admin. of the Non-appropriated Fund*, No. 17-AO-034 (E.D. Mich. Nov. 30, 2017).

>            MR. SMITH:  Yes, your Honor.  Thank you, and you are correct.  We've reached a settlement of the claims that Mr. Lippett has against Lisa Adray, but this is also going a global settlement, which means it includes the claims that Mr. Lippett would otherwise have against MDOC Defendants that have been dismissed, which include, but are not limited to Nurse Dravelling and Nurse Herring.
>
>            The amount that MDOC will pay is $480,000.  My understanding is that this will be a paid to the Miller Canfield law firm. . . . [T]he parties will file a stipulation to dismiss the case with prejudice on or before August 30th.  In that intervening period, I will work on a . . . written settlement agreement, that I will send to Ms. Giordano and Ms. Lisznyai and Mr. Cranmer, and we will move forward from there.
> . . . .
>            THE COURT:  Okay.  Is there an attorney for the Plaintiff side who can confirm this?
>
>            MS. GIORDANO:  Yes, your Honor.  Confirming all of that, and I just want to also confirm that there will be a provision in that agreement regarding no SCFRA clawbacks.
>
>            MR. SMITH:  Yes, absolutely.  Thank you.
>
>            THE COURT:  All right.  Are we ready for me to voir dire?
>
>            MR. SMITH:  Yes.  Yes, your Honor.
>
>            THE COURT:  Then what I'm going to do is, first of all, I see on the screen the Plaintiff, Leon Lippett.  And so I'm going to ask you to please state and spell your name for the record and then I'm going to have you raise your right hand.
>
>            PLAINTIFF:  Leon Desean Lippett, L-E-O-N L-I-P-P-E-T-T.
> . . . .
>            THE COURT:  Okay.  You may put your hand down, and I'm going to ask you some questions.
>
>            You are the named Plaintiff in this case; correct?
>
>            PLAINTIFF:  Yes, Sir.
>
>            THE COURT:  And where are you appearing from right now on this Zoom call?
>
>            PLAINTIFF:  At Macomb County Correctional Facility.
>
>            THE COURT:  You participated in a settlement conference by Zoom that we held on May 29th of this year as well as today; correct?

3

PLAINTIFF:  Yes, sir.

THE COURT:  And throughout the course of the settlement conference you had the benefit of your attorneys to give you advice.  They were in a separate virtual room with you where they could give you any advice that you needed; is that right?

PLAINTIFF:  Yes, sir.

THE COURT:  Did you hear the terms of the settlement that were just placed on the record?

PLAINTIFF:  Yes, sir.

THE COURT:  Did you understand all of the terms of the settlement that were placed on the record?

PLAINTIFF:  Yes, sir.

THE COURT:  Do you agree to all of the terms of the settlement?

PLAINTIFF:  Yes, sir.

THE COURT:  And you understand that as a result of this settlement this case will not be going to trial?

PLAINTIFF:  Yes, sir.

THE COURT:  Do you understand that if this case has gone to trial you might have gotten a better result than this, you might have gotten a worse result than this, you might have gotten nothing at all?

PLAINTIFF:  Yes, sir.

THE COURT:  And do you understand and agree that in order to get the amount of money that was just discussed on the record you're going to have to sign a release?

PLAINTIFF:  A release?

THE COURT:  Yes.  A release of all your claims.

PLAINTIFF:  Oh.  Yes, sir.  Yes, sir.  Yes, sir.

THE COURT:  And you understand that that will release not just the present Defendant, Adray, but will also release the prior Defendants?

PLAINTIFF: Yes, sir.

THE COURT: And you agree to waive any right to appeal as a result of this?

PLAINTIFF: Yes, sir.

THE COURT: And do you understand and agree that your case as a result of this settlement will be dismissed with prejudice, meaning that it cannot be refiled?

PLAINTIFF: Yes, sir.

THE COURT: Are you doing this of your own free will?

PLAINTIFF: Yes, sir.

THE COURT: Do you understand that the Court considers this to be a full and final settlement and that I will enforce it?

PLAINTIFF: Yes, sir.

THE COURT: Do you understand that you can't change your mind about this tomorrow, you know, when you talk to other people and they have better ideas?

PLAINTIFF: Yes, sir.

THE COURT: Okay. Do you have any questions for your client, Ms. Giordano, or any of the other attorneys?

MS. GIORDANO: No. No, your Honor, we don't.
. . . .
THE COURT: And, Mr. Lippett, you understand that the amount that's been agreed to, $480,000, it's not going to be some other amount to cover costs or attorneys fees or anything else, everything that you have in terms of those is all covered by this amount?

PLAINTIFF: Yes, sir. Yes, sir. Yes, sir.

THE COURT: Okay.

MS. GEMINICK: And that would include—I'm sorry Josh. I'm going to just jump in here.

MR. SMITH: Yes.

5

>MS. GEMINICK: Anything that's owed to Mr. Bendure or prior attorneys, that's the responsibility of Mr. Lippett and his counsel to work out.
>
>THE COURT: Do you understand that, Mr. Lippett?
>
>PLAINTIFF: Yes, sir.

(ECF No. 277, PageID.5560–5565).

On August 14, 2024, Plaintiff filed a *pro se* motion asking this Court to void the settlement agreement. (ECF No. 274). Plaintiff acknowledges that he reached a global settlement agreement on all material terms. But Plaintiff argues that his global settlement is nonetheless unenforceable due to his belief that he was unable to afford expert witnesses and that he could not prevail at trial unless he presented expert testimony. According to Plaintiff, but for this misunderstanding, he would not have agreed to settle this case.

Miller Canfield moved to withdraw after Plaintiff filed the instant motion challenging the settlement agreement, and the Court granted Miller Canfield's motion. Plaintiff has been proceeding *pro se* since August 28, 2024.

In response to Plaintiff's motion challenging the settlement agreement, Defendant asserts that the Court should deny Plaintiff's motion, enforce the settlement agreement that the parties reached on July 26, 2024, and dismiss Plaintiff's action with prejudice.

Plaintiff's motion has been fully briefed and the Court rules on it without a hearing. *See* E.D. Mich. L.R. 7.1(f)(2).

**STANDARD OF REVIEW**

This Court may summarily enforce settlement agreements "where no substantial dispute exists regarding the entry into and terms of an agreement." *RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 646 (6th Cir. 2001). But "an evidentiary hearing is required where facts material to an agreement are disputed." *Id.* No evidentiary hearing is required, however, when

"the record shows that all the essential terms had been agreed upon in open court and all that remained was to sort out the non-material details and put the agreement in writing." *Id.*

## ANALYSIS

The record shows that the parties reached a valid and enforceable global settlement agreement. The Court shall enforce that agreement.

**I.     The Settlement Agreement**

The parties agree that Michigan law governs the settlement agreement's enforceability. *See In re Auto. Parts Antitrust Litig.*, 997 F.3d 677, 681 (6th Cir. 2021) ("A settlement agreement is a contract governed by principles of state contract law . . . ."). In Michigan, "[a] valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *ATF Mich. v. Michigan*, 866 N.W.2d 782, 804 (Mich. 2015).

The record reflects that the parties entered into a valid and enforceable settlement agreement. Under the terms of that agreement: (1) Plaintiff made a global release of all claims asserted in this case; (2) Defendant should cause MDOC to pay a total settlement amount of $480,000;[3] (3) Plaintiff should execute a written settlement agreement that includes the above terms as well as a provision stating that Michigan's State Correctional Facility Reimbursement Act does not apply to the settlement amount; and (4) this case should be dismissed with prejudice on or before August 30, 2024.

Accordingly, the Court shall enforce the settlement agreement. The Court shall order: (a) Defendant's counsel to provide Plaintiff with the written settlement agreement; (b) Plaintiff to

---

[3] The parties agreed that the settlement amount would be paid directly to Plaintiff's attorneys (as opposed to being paid to Plaintiff directly) due to Bendure's attorney lien. That term, however, was not material.

execute that agreement; (c) Defendant to file a copy of such executed agreement with the Court; (d) Defendant to cause MDOC to deposit $480,000 with the Court; and (e) that this action is dismissed with prejudice. And the Court shall retain jurisdicion to enforce the settlement agreement and resolve Bendure's charging lien.

Plaintiff challenges the settlement agreement on a few grounds, none of which prevail.

## II. Plaintiff's Challenges to the Settlement Agreement

Plaintiff argues that the settlement agreement is unenforceable under *Lenawee County Board of Health v. Messerly*, 331 N.W.2d 203 (Mich. 1982), and *Plamondon v. Plamondon*, 583 N.W.2d 245 (Mich. Ct. App. 1998) (per curiam), but these challenges fail.[4]

### A. *Lenawee* County: Mutual Mistake

*Lenawee County* explained that "[r]escission is *not* available . . . to relieve a party who has assumed the risk of loss in connection with the mistake." 331 N.W.2d at 209–10 (emphasis added). And a party bears the risk of his mistake when "he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient." *Id.* at 210 n.12 (quoting Restatement (Second) of Contracts § 154(b) (Am. L. Inst. 1981)).

Here, Plaintiff alleges that Miller Canfield (correctly) told him that the undersigned District Judge had rejected its request for preauthorization to draw from the Non-appropriated Fund, and that he (incorrectly) took Miller Canfield's statements to mean that the undersigned District Judge had barred them from *ever* seeking reimbursement from the Fund at any point in

---

[4] Plaintiff also contends that he is entitled to relief under Federal Rule of Civil Procedure 60(b). However, "Rule 60(b) allows a district court to *vacate a final judgment*," and the Court has not issued final judgment in this case. *Blue Diamond Coal v. Trustees of UMWA Combined Ben. Fund*, 249 F.3d 519, 523 (6th Cir. 2001) (emphasis added). Rule 60(b) does not empower this Court to ignore the parties' settlement agreement at this juncture.

the future. According to Plaintiff, this means that the parties' settlement agreement is unenforceable. The Court disagrees.

Plaintiff knew or should have known that he had limited knowledge regarding the effect of the undersigned District Judge's order denying Miller Canfield's preauthorization request, and he evidently treated his limited knowledge as sufficient. Consequently, Plaintiff assumed the risk of his mistake and that mistake does not defeat the settlement agreement.

### B. *Plamondon*: Mistake, Fraud, and Unconscionability

*Plamondon* discussed the enforceability of a settlement agreement and explained, "Under usual contract principles, plaintiff is bound by the settlement agreement absent a showing of mistake, fraud, or unconscionable advantage." 583 N.W.2d at 246. The court concluded, "Plaintiff does not advance any claim on appeal that the settlement agreement was the result of mistake, fraud, or unconscionable advantage." *Id.* The same is true here.

#### i. Mistake

As discussed above, the settlement agreement is enforceable notwithstanding Plaintiff's unilateral mistake.

#### ii. Fraud

With respect to fraud, "Michigan's contract law recognizes several interrelated but distinct common-law doctrines—loosely aggregated under the rubric of 'fraud'—that may entitle a party to a legal or equitable remedy if a contract is obtained as a result of fraud or misrepresentation." *Titan Ins. Co. v. Hyten*, 817 N.W.2d 562, 567 (Mich. 2012). These are "the doctrines of actionable fraud, innocent misrepresentation, and silent fraud." *Id.* at 569.

The doctrines of actionable fraud and innocent misrepresentation do not help Plaintiff here because they require fraud perpetrated by a contracting party and Plaintiff does not allege misconduct by Defendant. *See, e.g.*, *Candler v. Heigho*, 175 N.W. 141, 143 (Mich. 1919) ("[T]o

9

constitute actionable fraud it must appear . . . [t]hat *defendant* made a material misrepresentation . . . ." (emphasis added) (quoting 20 *Cyclopedia of Law and Procedure* 13 (William Mack ed., 1906)), *overruled in part on other grounds by U.S. Fidelity & Guar. Co. v. Black*, 313 N.W.2d 77 (Mich. 1981); *Black*, 313 N.W.2d at 85 (explaining that "the misrepresentation must be made 'in a transaction between'" the misrepresenter and the injured party to justify relief under the doctrine of innocent misrepresentation).

The doctrine of silent fraud also does not help Plaintiff. Although the doctrine recognizes that "one holding confidential and fiduciary relationships to another" is "morally and legally bound to communicate the facts" to the other person, relief is not warranted unless the fiduciary "conceal[ed] [the facts] for his own benefit and profit and to the disadvantage of the other." *Grigg v. Hanna*, 278 N.W. 125, 132 (Mich. 1938). Here, Plaintiff does not allege (nor could he) that Miller Canfield profited from the settlement agreement.

### iii. Unconscionability

The Michigan Court of Appeals asks two questions to resolve whether contracts are unconscionable: (1) "What is the relative bargaining power of the parties, their relative economic strength, the alternative sources of supply, in a word, what are their options?"; and (2) "Is the challenged term substantively reasonable?" *Hubscher & Son, Inc. v. Storey*, 578 N.W.2d 701, 703 (Mich. Ct. App. 1998) (per curiam) (quoting *N.W. Acceptance Corp. v. Almont Gravel, Inc.*, 412 N.W.2d 719, 723 (Mich. Ct. App. 1987)). Plaintiff fails both prongs of this test.

Instead of releasing his claims, Plaintiff could have gone to trial with highly experienced counsel while paying no attorneys' fees them. And there is no evidence that Defendant believed that the undersigned District Judge had barred Miller Canfield from ever again requesting preauthorization to draw from the Non-appropriated Fund in this case. As such, Plaintiff's bargaining position was no worse than Defendant's when he released his claims. To the extent

that Plaintiff was mistaken about his position, he assumed the risk of that mistake. And it cannot be said that Plaintiff's release in consideration of nearly half-a-million dollars was substantively unreasonable.

At bottom, the settlement agreement is enforceable despite Plaintiff's arguments to the contrary.

## CONCLUSION & ORDER

The parties reached a valid and enforceable settlement agreement, and the Court will enforce it. Accordingly, **IT IS ORDERED** that the settlement agreement that the parties placed on the record on July 26, 2024, is **ENFORCEABLE;** Plaintiff's motion (ECF No. 274) is **DENIED**; and this action is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED**:

- On or before **October 4, 2024**, Defendant's counsel shall provide a written settlement agreement to Plaintiff that includes: (1) Plaintiff's global release of claims; (2) Defendant's obligation to cause MDOC to pay $480,000 to Plaintiff; and (3) a provision stating that Michigan's State Correctional Facility Reimbursement Act does not apply to the settlement amount;

- Within two (2) weeks of receiving such agreement, Plaintiff shall execute it and provide it to Defendant's counsel;

- Within two (2) weeks of receiving such executed agreement from Plaintiff, Defendant's counsel shall file a copy with the Court;
- On or before **November 18, 2024**, Defendant shall cause MDOC to furnish to the Clerk of Court $480,000.00 by certified check, cashier's check, or money order;[5] and

- The Court shall retain jurisdiction to enforce the settlement agreement and resolve Bendure's charging lien.

**IT IS SO ORDERED**.

---

[5] The Clerk of Court shall deposit this sum in an interest-bearing account in accordance with Local Rule 67.1. The Clerk of Court shall deduct from the account any fee authorized by the Judicial Conference of the United States.

11

Dated: September 20, 2024    s/Sean F. Cox
Sean F. Cox
U. S. District Judge

12